# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHAD BRACY,** | : | **CIVIL NO. 1:18-CV-76** |
| **Petitioner** | : | **(Chief Judge Conner)** |
| v. | : | |
| **WARDEN, FCI ALLENWOOD,** | : | |
| **Respondent** | : | |

## **MEMORANDUM**

Presently pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by petitioner Chad Bracy ("Bracy"), an inmate confined at the Allenwood Low Security Federal Correctional Institution in White Deer, Pennsylvania. Bracy contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution in Berlin, New Hampshire ("FCI-Berlin"). For the reasons set forth below, the court will deny the habeas petition.

## I. Background

On September 9, 2009, Bracy pled guilty in the United States District Court for the District of Maryland to a charge of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. United States v. Bracy, No. 1:09-cr-244 (D. Md.). At sentencing, the District Court determined that Bracy was a career offender under U.S.S.G. § 4B1.1. Id. On November 9, 2009, Bracy was sentenced to a one hundred and fifty-one (151) month

term of imprisonment pursuant to a Rule 11(c)(1)(C) plea. (Doc. 1, at 1; United States v. Bracy, No. 1:09-cr-244 (D. Md.)). His projected release date is May 12, 2019. (Doc. 6-1 at 4, Public Information Inmate Data).

In the instant petition, Bracy challenges disciplinary proceedings that were held at FCI-Berlin in which he was found guilty of violating code 224, fighting any person, and code 313, lying to staff. (Doc. 1). Specifically, Bracy claims that his due process rights were violated because the incident report was not properly processed prior to the disciplinary hearing. (Id.) For relief, Bracy seeks expungement of the incident report and restoration of twenty-seven (27) days of lost good conduct time. (Id. at 2).

## II. Discussion

On July 20, 2016, at 2:43 p.m., an incident report was generated and served on Bracy charging him with violating code 224, assault on another person, and code 313, lying or providing a false statement to a staff member. (Doc. 6-1 at 10, 12, 15, 29). When the incident report was being processed during evening watch operations, it was discovered that Bracy was served with an unsigned and undated copy. (Id. at 10, 14, 15). On July 20, 2016, at 8:05 p.m., Special Operations Lieutenant Dickman provided Bracy another copy of the incident report that was signed and dated. (Id.)

On July 22, 2016, Bracy appeared before the Unit Disciplinary Committee ("UDC") and had "no comment" regarding the incident. (Doc. 6-1 at 29). The UDC found that Bracy committed the prohibited acts as charged and referred the

2

incident report to the Discipline Hearing Officer ("DHO") with a recommendation that sanctions be imposed. (Id.)

On July 22, 2016, a staff member informed Bracy of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 6-1 at 31, Inmate Rights at Discipline Hearing). Bracy was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-1 at 32, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Bracy signed both forms, waived his right to have a staff member represent him, and elected not to call any witnesses. (Doc. 6-1 at 25-27).

On July 27, 2016, a DHO hearing was conducted. (Doc. 6-1 at 10). At the hearing, Bracy stated "my due process rights were violated, I don't have a signed copy of my incident report and I don't know who served me." (Id.) Therefore, the DHO proceeding was adjourned and the matter was investigated. (Id.)

On August 10, 2016, Bracy was served with another incident report, number 2874878, charging him with a code 224 violation for assault on another person, and a code 331 violation for lying or providing a false statement to a staff member. (Doc. 6-1 at 12, Incident Report). The incident report indicated that it was a rewrite from July 20, 2016 due to a clerical error. (Id.) The incident is described as follows:

> At the closing of an SIS investigation, it was the conclusion of this investigator, on June 26, 2016, and at approximately 8:30 p.m., based on factual information, witnesses interviews and inmate medical assessments; inmate Bracy, Chad, Reg. No. 44207-037, assault[ed] inmate Gonzalez, Carlos, Reg. No. 95858-038. While in the television (TV) room at the FCI Berlin Satellite Prison Camp, inmate Bracy entered the TV room and changed the channel while inmate Gonzales was watching it. An argument occurred and Bracy exited the TV room. A few minutes later inmate Bracy re-entered the TV room and

3

changed the channels again, Gonzalez stood up and inmate Bracy
punched him several times in the head and upper body. Gonzalez fell
to the floor and Bracy kicked him [in] the midsection of his body.
Bracy then exited the TV room.

During an interview with inmate Bracy on June 27, 2016, at 12:35 p.m.,
he stated, "I was not involved in a fight; I have no issues with no
on[e]." This was a false statement made by inmate Bracy. Supporting
documents supports inmate Bracy was in the area during the time of
the incident and he did in fact assault another person.

This is a rewrite from 7-20-16, at 12:55 p.m., due to a clerical error.

(Doc. 6-1 at 12, Incident Report). After Bracy was served with the third copy of the incident report on August 10, 2016, he was afforded another UDC hearing.

On August 10, 2016, at 7:30 p.m., Lieutenant Wiley gave Bracy advanced written notice of the charges against him and an investigation ensued. (Doc. 6-1 at 9, § I). During the investigation, Bracy was advised of his right to remain silent, and had no formal comment regarding the charges. (Doc. 6-1 at 13). Bracy did not request to call any witnesses regarding the incident. (Doc. 6-1 at 13). At the conclusion of the investigation, the lieutenant determined that Bracy was appropriately charged, and he referred the incident report to the UDC for further disposition. (Id.)

On August 12, 2016, Bracy appeared before the UDC and had "no comment" regarding the incident. (Doc. 6-1 at 12). The UDC found that Bracy committed the prohibited acts as charged and referred the incident report to the DHO with a recommendation that sanctions be imposed. (Id.)

On August 12, 2016, a staff member informed Bracy of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing"

4

form. (Doc. 6-1 at 25, Inmate Rights at Discipline Hearing). Bracy was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-1 at 26-27, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Bracy signed both forms, waived his right to have a staff member represent him, and elected not to call any witnesses. (Doc. 6-1 at 25-27).

On August 12, 2016, Bracy appeared for a hearing before DHO N. Hayden. (Doc. 6-1 at 9-11, DHO Report). During the August 12, 2016 hearing, the DHO confirmed that Bracy received advanced written notice of the charges on August 10, 2016, that he had been advised of his rights before the DHO on August 12, 2016, and that Bracy waived his right to a staff representative and did not request to call any witnesses. (Id. at 9). The DHO again advised Bracy of his rights, Bracy indicated that he understood them, and that he was ready to proceed with the hearing. (Id. at 10). Regarding the charges, Bracy stated: "From one of the officers statements, how did it write as an assault and not a fight? People don't like me and this is their way to get me out." (Doc. 6-1 at 9, § III).

After consideration of the evidence, the DHO found that Bracy committed the prohibited acts of assaulting another person and lying to staff. (Doc. 6-1 at 11). The DHO explained his findings as follows:

> Your due process rights were read and reviewed with you by the DHO and you stated you understood your rights. The DHO noted you did not request a Staff Representative nor did you request any witnesses. The DHO read aloud the incident report. At no time during the DHO hearing did you raise any procedural issues, request witnesses or present written documentation as evidence.

5

During the initial DHO hearing held on July 27, 2016 at 10:32 A.M. you stated: "My due process rights were violated. I don't have a signed copy of my incident report and I don't know who served me." Upon research into your claim, it was discovered that Acting Lieutenant Dickman realized he did not give you a signed copy on July 20, 2016 at 2:43 P.M. To rectify this, Acting Lieutenant Dickman went to the Special Housing Unit to cell 129 and handed you a signed copy at 8:05 P.M. the same day. B. Dickman, Acting Lieutenant and S. Tawes, Lieutenant submitted a memorandum attesting to this fact.

You received a copy of the original incident report on July 20, 2016 at 2:43 P.M. and a signed copy at 8:05 P.M. You were issued a corrected copy on August 10, 2016 at 7:30 P.M. due to administrative error. You stated you received all three copies.

The DHO finds on July 20, 2016, you were charged with violating prohibited acts 224; Assaulting any Person and 313; Lying to Staff. The DHO does find sufficient evidence to support the prohibited acts 224; Assaulting any Person and 313; Lying to Staff. Therefore the prohibited acts 224; Assaulting any Person and 313; Lying to Staff are upheld.

To support this finding, the DHO relied upon staff member G. Brown's written account of the incident paraphrased as follows: At the closing of an SIS investigation, on 7-20-16 at approximately 12:30 p.m., it was the conclusion of this investigator, on June 26, 2016 and at approximately 8:30 p.m., based on factual information, witness interviews and inmate medical assessments; inmate Bracy, Chad, Reg. No. 44207-037, assaulted inmate Gonzalez, Carlos, Reg. No. 95858-038. While in the television (TV) room at the FCI Berlin Satellite Prison Camp, inmate Bracy entered the TV room and changed the channel while inmate Gonzales was watching it. An argument occurred and Bracy exited the TV room. A few minutes later inmate Bracy re-entered the TV room and changed the channels again, Gonzalez stood up and inmate Bracy punched him several times in the head and upper body. Gonzalez fell to the floor and Bracy kicked him in the midsection of his body. Bracy then exited the TV room. During an interview with inmate Bracy on June 27, 2016, at 12:35 p.m., he stated, "I was not involved in a fight; I have no issues with no one." This was a false statement made by inmate Bracy. Supporting documents supports inmate Bracy was in the area during the time of the incident and he did in fact assault another person.

The DHO relied upon staff member J. Vickers' supporting memorandum paraphrased as follows: On 06-26-2016 Officer Brasse and I were conducting a 7:30 P.M. stand up count. After the count was finished we were both walking out of the camp and I overheard a group of inmates stating "Chad beat his ass". I walked slower so I could catch the rest of what the group of inmates were saying but they stopped. After we came back to the office, I told Officer Brasse to get his breathalyzer and let's go breathalyze the whole unit. That's when inmate Gonzalez came to the message center and said he was hurt playing Racquet ball. Operations Lieutenant was notified and they escorted both inmates to the FCI.

The DHO relied upon staff member H. Brasse's supporting memorandum paraphrased as follows: on 26 June 2016 at approximately 8:00 PM, Recreation Specialist J. Vickers approached me and said "an inmate just told me there was a fist fight between inmates Gonzalez and Bracy". As we were about to leave to check on the inmates, inmate Gonzalez #95858-038 came into the message center, bleeding from the mouth and said he fell playing racquet ball and handed me a racquet with blood smeared on the racquet. I observed a large laceration on his upper lip and upon an upper torso check additional redness and bruising on the chest area.

The DHO relied upon the evidence photograph of inmate Gonzalez, Carlos #95858-038 depicting a laceration on the left side of his upper lip.

The DHO relied upon the Clinical Encounter reading: Inmate Gonzalez, Carlos #95858-038 received the following injuries: 2 cm upper lip laceration requiring 5-0 non absorbable sutures.

The DHO relied upon the Clinical Encounter reading: Inmate Bracy, Chad #44207-037 received no injuries upon examination.
The DHO relied upon the Inmate Investigative Report detailing witness accounts of the incident. Witness #1 stated: "They (Gonzalez and Bracy) were having a close conversation. Inmate Gonzalez had a busted lip." Witness #2 stated: "Inmate Gonzalez was watching soccer in the TV room. Bracy came in, turned the TV to another channel. They (Gonzalez and Bracy) got into an argument. Bracy left the room and later returned. Bracy sucker punched Gonzalez. Gonzalez never got a chance to fight back. Bracy ran out of the TV room with [h]is hands in his pockets as if he were hiding something. I think he had a lock. The cut on Gonzalez's lip was not caused by a fist." Witness #3 stated: "Gonzalez was watching the soccer game and had been for a while. When Bracy came in and changed the TV, Gonzalez got up and

7

> told him he was watching the soccer game. They got into an argument. Bracy left the room. Gonzalez changed it back to the soccer game. A few minutes later, Bracy cane back in the room. He had his right hand under his shirt at his waist as if he had a weapon. Bracy changed the TV back to Baseball. Gonzalez got up and Bracy stepped to Gonzalez and punched him several times in the face. That is what caused his busted lip." Witness #4 stated: "Gonzalez and five other guys were watching the soccer game. Bracy came in and changed the channel to a Baseball game. Gonzalez asked why he changed the TV. We were watching the soccer game. Bracy told them that was not their TV and it was over there. It was a one on one issue between them. Bracy sucker punched him and split his lip. When Gonzalez fell to the floor, Bracy kicked him while he was down; when Gonzalez got up Bracy left the room. Gonzalez was not causing any problems. Bracy went in there looking for a fight."
>
> Therefore, based on the greater weight of evidence, the DHO finds you committed prohibited act 224; Assaulting any Person and 313; Lying to Staff.

(Doc. 6-1 at 10-11, § V).

As such, the DHO sanctioned Bracy with twenty-seven (27) days loss of good conduct time, loss of phone privileges for three (3) months, and loss of visiting privileges for one (1) month. (Doc. 6-1 at 11, § VI). The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to assault another inmate or staff, whether or not serious injury is inflicted and lie to staff threatens the health, safety and welfare of not only the inmate involved, but that of all other inmates and staff. Inmates observing the assault may become involved thus creating a larger disturbance for staff to control. Assaults make it difficult to provide security for all concerned. This type of action cannot and will not be tolerated from any inmate. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his action/behavior at all times.

(Doc. 6-1 at 11, § VII). At the conclusion of the hearing, the DHO advised Bracy of his appeal rights. (Id. at 11, § VIII).

8

Bracy's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to

9

support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R.

§§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the matter *sub judice*, it is clear that Bracy was afforded all of the required procedural rights set forth in Wolff. He received notice of the incident report on July 20, 2016 at 2:43 p.m., July 20, 2016 at 8:05 p.m., and August 10, 2016 at 7:30 p.m. (Doc. 6-1 at 29, § I (15), (16); Doc. 6-1 at 10, 14, 15; Doc. 6-1 at 12, § I (15), (16)). The uncontroverted record contains copies of the incident reports dated July 20, 2016, 2:43 p.m., and August 10, 2016, 7:30 p.m. (Doc. 6-1 at 12, 29). The uncontroverted record also contains staff memoranda indicating that Bracy was initially provided a copy of the July 20, 2016 that was unsigned and undated. (Id.) Lieutenant Dickman corrected this mistake, and subsequently signed and dated the incident report. (Id.) Lieutenant Dickman then provided a copy of the signed and dated incident report to Bracy on July 20, 2016 at 8:05 p.m. (Doc. 6-1 at 14, 15). The record contains video surveillance photographs of Lieutenant Dickman purportedly handing Bracy a copy of the incident report at his cell on July 20, 2016 at 8:05 p.m. (Doc. 6-1 at 17-19).

Bracy was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Bracy declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position. At the conclusion of the hearing, Bracy received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Bracy was also notified of his right to appeal.

Given that Bracy was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly contains sufficient evidence to allow the DHO to conclude that Bracy was guilty of the charges. The DHO relied on memorandums from several staff members, the reporting officer's incident report, the photograph of inmate Gonzalez's injuries, photographs of Bracy, Clinical Encounter reports of Gonzalez and Bracy, and the statements of four witnesses. (Doc. 6-1 at 10-11). Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Bracy, except a self-serving statement that "people don't like me and this is their way to get me out", the court finds that Bracy's due process rights were not violated by the determination of the DHO. (Doc. 6-1 at 9).

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Bracy was found guilty of a 200-level, high severity prohibited act, and 300-level, moderate severity level prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 6 months).
- D. Make monetary restitution.
- E. Monetary fine.

F.  Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.  Change housing (quarters).
H.  Remove from program and/or group activity.
I.  Loss of job.
J.  Impound inmate's personal property.
K.  Confiscate contraband.
L.  Restrict to quarters.
M.  Extra duty.

28 C.F.R. § 541.3 (Table 1).

Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 300-level prohibited acts:

A.  Recommend parole date rescission or retardation.
B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.  Disciplinary segregation (up to 3 months).
D.  Make monetary restitution.
E.  Monetary fine.
F.  Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.  Change housing (quarters).
H.  Remove from program and/or group activity.
I.  Loss of job.
J.  Impound inmate's personal property.
K.  Confiscate contraband.
L.  Restrict to quarters.
M.  Extra duty.

28 C.F.R. § 541.3 (Table 1).

Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited acts and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2874878.

## III. Conclusion

Based on the foregoing, the court will deny the petition for writ of habeas corpus. An appropriate order will issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: December 18, 2018